Suzanne HARTENBACH and Dr. Norbert Hartenbach, Plaintiffs-Respondents,

v.

Manuel D. JOHNSON, Defendant and Third-Party Plaintiff-Appellant,

and

Thomas Michael Moorkamp, Third-Party Defendant-Respondent.

No. 43416.

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 2, 1982.

Jack E. Thomas, Jr. and James L. Ho-
mire, Jr., St. Louis, for defendant and third-
party plaintiff-appellant Manuel Johnson.

Vincent E. Hartigan, Jr., St. Louis, for
Suzanne Hartenbach and Dr. Norbert Har-
tenbach, plaintiffs-respondents.

SNYDER, Judge.

Defendant Manual D. Johnson appeals from an adverse judgment entered upon jury verdict in an action against him for personal injuries and damages arising out of a motorboat accident. Appellant argues he was entitled to a judgment in accordance with his motion for directed verdict because respondents Suzanne Hartenbach and Dr. Norbert Hartenbach were guilty of contributory negligence as a matter of law and that the trial court erred in submitting the issue of appellant's excessive speed to the jury because it was not supported by the evidence. The judgment is affirmed.

Appellant filed a counterclaim against respondents and a third-party claim against Thomas Michael Moorkamp. The judgment in favor of respondents disposes of the counterclaim and the jury found in favor of Moorkamp on the third-party claim. The appeal was taken from the entire judgment, but no issue was raised in appellant's brief concerning the third-party claim. The third-party judgment in favor of Moorkamp is therefore affirmed.

The marine collision giving rise to this action occurred after dark on August 12, 1977 on the Lake of the Ozarks between appellant's bass boat and respondents' 18-foot motorboat. Respondents' boat sank, and appellant's boat sustained heavy damage.

Prior to the accident, respondents' boat was travelling east in a group of three boats, 30 to 50 yards apart from each other. The Katsev boat was to the right and slightly ahead of respondents' boat. The Moorkamp boat was to the left and slightly ahead of respondents' boat.

When respondents' party of three boats began this journey back to their vacation residences after dinner at a lakeside restaurant, it was dusk, and respondents discovered the white light mounted in the stern of their boat was burned out. The forward running lights were operational.

During the cruise, respondents' daughter sat in the back of the boat and held a lantern-like flashlight astern. Respondents' evidence was that the light which the daughter held provided more light than the light mounted in the stern of the boat because it was higher and could be seen from the sides rather than just from the rear. The light, however, probably could not be seen from in front of the boat. The boat was moving at approximately 20 to 30 miles per hour and was operated by William Hartenbach, respondents' 18 year old son.

William first noticed appellant when he saw appellant's red and green running lights approximately 100 yards directly in front and slightly to the left of respondents' boat. The son testified that appellant appeared to be moving west directly toward respondents as if to pass between the respondents' and the Moorkamp boats.

Appellant's boat then appeared to move toward the Moorkamp boat which caused the Moorkamp boat to veer left to avoid appellant. Appellant's boat also made a sharp turn left toward the Hartenbach boat in response to the near collision with the Moorkamp boat. Respondents' son turned the boat as sharply as he could to the right to try to avoid appellant, but the two boats collided.

Respondent Suzanne Hartenbach sustained serious and permanent injuries to her chin and jawbone as a result of the collision. She and the other occupants of the Hartenbach boat climbed or stepped out of the boat which sank almost immediately.

Before the collision, appellant had been fishing from his 17-foot bass boat near the bank. He had seen other boats approaching from the west or appellant's left. Appellant moved at an angle from where he had been fishing out into the lake, cleared the first boat closest to the bank, the Katsev boat, and then headed in a westward direction.

Appellant testified he saw two boats, the Moorkamp and Katsev boats which were 100 to 150 yards apart. He intended to pass between the two boats, 30 to 40 yards from the Moorkamp boat. Before appellant closed on the Moorkamp boat, however, the Moorkamp boat turned to the right toward appellant when 15 or 20 yards away.

Someone in the Moorkamp boat had a hand-held spotlight, and the light was swinging across the water, sometimes on appellant, sometimes not. Appellant had slowed his speed, but then increased his speed and veered sharply left to avoid collision with the Moorkamp boat.

Appellant never saw the Hartenbach boat until immediately prior to the collision when appellant saw the bow of the Harten-bach boat in appellant's right front running light. There was no opportunity to take action to avoid the collision. Appellant esti-mated his speed at 20 to 25 miles per hour just before the two boats collided.

Appellant testified he believed the re-spondents' boat had no lights of any kind and that, if respondents' boat had had lights, he would have seen them.

Appellant was issued a ticket and paid a fine for reckless and negligent operation of a motorboat, no proper lookout.

The jury returned a verdict for the plain-tiffs and assessed personal injury damages in the sum of $18,000 for respondent Su-zanne Hartenbach and property damages of $1,300 for respondent Norbert Hartenbach.

In his first point relied on, appellant con-tends he was entitled to a judgment in accordance with his motion for directed ver-dict because respondents were guilty of con-tributory negligence as a matter of law. Appellant argues the respondents' boat was in violation of federal statutory lighting requirements which constituted negligence per se. This contention is ruled against appellant because whether respondents' statutory violation contributed to cause the accident was a jury issue.

■ In order for the violation of a stat-ute or ordinance to constitute actionable negligence, it must appear that there was in fact a violation of the statute or ordinance, that the injured party was within the class of persons intended to be protected by the statute or ordinance, that the injury was of such character as the statute or ordinance was designed to prevent, and that the viola-tion of the statute or ordinance was the proximate cause of the injury. *Purdy v.*

*Foreman*, 547 S.W.2d 889, 892[4] (Mo.App. 1977); *Sayers v. Haushalter*, 493 S.W.2d 406, 409[6] (Mo.App.1973).

Although the parties do not dispute that respondents were in violation of the federal statute requiring them to display a bright white light aft that is visible all around the horizon when underway from sunset to sun-rise, the parties do dispute whether the respondents' omission was the proximate cause of the accident.

■ Even though the violation of a stat-ute is ordinarily negligence per se and can constitute contributory negligence barring a plaintiff's recovery, *Vanasse v. Plautz*, 538 S.W.2d 928, 932[4] (Mo.App.1976), such contributory negligence must still be the proximate cause of the resultant injuries or damages. *Vanasse v. Plautz, supra* at 932[5].

■ What is the proximate cause of an injury is ordinarily a question to be deter-mined by the trier of fact; and, if reasona-ble minds could differ on the question, the issue should be determined by the fact find-er. *George v. Howard Construction Co.*, 604 S.W.2d 685, 692–693[5–14] (Mo.App. 1980).

■ Unless reasonable minds can reach no other conclusion but that a plaintiff is barred from recovery by his negligence, the issue of contributory negligence should not be taken from the trier of fact. *Mitchell v. Buchheit*, 559 S.W.2d 528, 530[2] (Mo. banc 1977).

■ This appellate court cannot conclude as a matter of law that respondents' inju-ries and damages would not have occurred if respondents' boat had displayed the ap-propriate stern light. The collision between appellant's and respondents' boats was gen-erally a head-on collision. Appellant testi-fied unequivocally that he never saw re-spondents' front running lights which re-spondents' evidence showed to be operation-al. William Moorkamp testified that the red and green running lights on the bow of the Hartenbach boat were lighted and visi-ble before the collision and even when they

went beneath the surface as the boat was sinking. The jury could have found from the evidence that appellant's failure to see the running lights on the Hartenbach boat caused the collision and that the absence of a stern light on the Hartenbach boat was not a contributing factor.

In his second point relied on, appellant contends the instructions directing a verdict for respondents against appellant and respondents' converse instruction on the appellant's claim for damages to his bass boat were erroneous because the instructions submitted the issue of appellant's operation of his boat at excessive speed. Appellant argues such a submission was not supported by the evidence. His second point is also ruled against appellant. There was evidence to justify the submission.

■ The jury instructions of which appellant complains predicated appellant's liability or respondents' non-liability upon a finding appellant was negligent in failing to keep a careful lookout or operating his boat at an excessive speed. In such instructions, each element of the disjunctive instruction must be supported by substantial evidence, and lack of such support on any theory submitted renders the instruction erroneous. MAI 17.02 Notes on Use (1980 Revision) Note 2. *Stanfill v. City of Richmond Heights*, 605 S.W.2d 501, 502[1] (Mo. App.1979) (failure to keep a lookout or failure to slacken speed when reasonable likelihood of automobile, truck collision should have become apparent); *Yust v. Link*, 569 S.W.2d 236, 240 (Mo.App.1978) (submission in an automobile case for failure to keep a careful lookout, excessive speed or failure to yield right-of-way); *Schneider v. Finley*, 553 S.W.2d 727, 730[2] (Mo.App.1977) (submission in an automobile truck case for failure to keep a lookout or excessive speed).

■ Whether any particular speed is excessive depends upon the circumstances and conditions existing at the time of the accident. *Howland v. West*, 507 S.W.2d 345, 348[4] (Mo.1974); *Schneider v. Finley*, *supra* at 731[8] (truck and automobile cases). Further, the instruction based upon excessive speed should be submitted only if there is evidence that the alleged acts were the proximate cause of the collision. *Yust v. Link, supra* at 240[10]; *Schneider v. Finley, supra* at 730[3]. The test is whether speed prevented the party charged with such negligence from avoiding the accident. *Schneider v. Finley, supra.* The test applies to boat operation as well as the operation of motor vehicles.

■ In considering whether an instruction is supported by the evidence at trial, the appellate court views all the evidence in the light most favorable to the offering party, giving that party the benefit of all favorable inferences and disregarding evidence to the contrary. *Stanfill v. City of Richmond Heights, supra* at 502[1]; *Yust v. Link, supra* at 240.

■ In the case to be decided, evidence was given that appellant was operating his boat at perhaps 30 miles per hour or more on a dark night when he moved away from the bank and turned to go west between eastbound boats travelling along the southern bank of the lake. There was sufficient evidence to submit to the jury the question whether appellant's maneuver was executed at excessive speed and sufficient evidence to submit the question whether appellant's speed directly caused the collision with respondents' boat when appellant's boat suddenly came upon it.

The judgment is affirmed.

REINHARD, P. J., and CRIST, J., concur.